My name is Theodore Cox for Respondent Yen-Rong Zhao. Today we meet during the week of the 24th anniversary of the Tiananmen Square crackdown on peaceful protesters in Beijing and the iconic image for which is the individual standing in front of a line of tanks which well depicts the enforcement of the state power, quote-unquote, by any means necessary in Guangdong Province, her home province. Her first child was a violation of the family planning policy because single women are not allowed to give birth anywhere in China. Ms. Zhao now has two sons, an additional violation of Guangdong's one-child policy, and she faces a significant risk of forced sterilization. The main error of the Board's October 31 decision of 2011 on review here is in rejecting evidence from other cities in Guangdong Province as, quote, not material, quote, to her claim. We have evidence in the record that as a whole, Guangdong Province as a whole requires an enforcement by any means necessary to stabilize low birth level, the record page 98. And second, enforcement coming from Puning and other cities complements this information about what is going on in Guangdong as a whole. I would like to first distinguish this Court's prior decision in Feng Guilin, which also involves a family with two children claiming asylum. In that case, there are three differences that are relevant to our discussion today. One is that that case involves a change of country conditions. The issue is whether or not a change of country conditions was established because it was an untimely motion to reopen. In this case, the government has conceded that this case should be remanded if the Court finds a prima facie case for asylum without regard to a finding as to changed country conditions. Mr. Cox? Yes, Your Honor. This is Silverman. Yes, Your Honor. I take your point that if this is a first motion to reopen, you don't have to show changed country conditions. Yes, that's right. Since this is a motion to reopen, however, you still have to show that there's new evidence that was not reasonably available at the time of the hearing. What is the new evidence that you couldn't have produced at the hearing? Well, the 2008 hearing is prior to the entire enforcement that we have seen in Guangdong. It was April, I think, 2010 in Puning where this massive campaign to sterilize 10,000 mostly women in a short period was undertaken and which mostly succeeded. So we are back to changed country conditions and you're saying things have changed. Well, it is a change. You can describe it. We don't need to reach the issue of change versus not change as long as we can show something that's new and material. And so my submission is that I would argue if we needed to reach the issue that that is a change showing stricter enforcement. However, for purposes of this decision, it is certainly a new and material event and that it's described in the reports of the Congressional Executive Commission for China, which is also new and previously unavailable because this is from 2009 and 2010 as well. So we do have to meet that motion to reopen standards, and I believe that that evidence does suffice to meet that standard, Your Honor. Can I ask, this is Judge Fischer, I'd also like to, you mentioned the province. As I understand it, the information you have relates to a different city from her home area. Is that correct? To a what? I'm sorry, Your Honor? A different city from the city that she's from. Yeah, she's from a Duhu town. It's not even a city. It's in Taishan County. It is not the same one as Kuning. We do have evidence in the record from a second city in Guangdong Province, which is Zhanggang. That's at record page 97, which it says it uses the word forced chancing. It says, even using the Chinese word, to abort out-of-plan pregnancies. And the CECC has made these examples as the flowing out of the by-any-means-necessary policies, which applies to Guangdong Province, and it mentions several other, I think about five provinces in total. So this is a campaign by any means necessary, which is not limited to Guangdong, but it's found elsewhere and advances a higher level push for strict enforcement of the family plan policy. But I'm only concerned about Guangdong. And I would like to say that the— Counsel? Yes, Your Honor? You're going to have to give us a break here. I have a question embedded in my preliminary. Okay, so— Yes, Your Honor? So you'll have to—with the lag, if you keep talking, we're not going to be able to ask questions that will help us decide the case. So I'd like to understand, if you give me a quick sketch of—because there seems to be a tension in the BIA rulings. They talk about province, local area, or other appropriate locality, and it's not clear to me whether they're saying you have to prove it in the city itself, if there—in this case, there was a mention of a city. You're saying, well, you're reverting to the province-wide discussion, and I don't know the political structure in China well enough to know about the distinction between a city and a province, province to province. If you analogize to the United States, I can understand that California and Arizona may have different policies. So if provinces are like our states and that the governmental structure in one province doesn't mean that the policies in that province would reflect what would happen in another province. When you move into a province and you compare separate cities that may be— and my understanding is that the two cities in this case are about 300 miles apart. If that were the case, that would be like San Francisco and Los Angeles. So if we were saying, well, you've got proof of what's going on in San Francisco, but the agencies say, well, you haven't proved what's going on in Los Angeles. Can you give us some help about understanding the equivalency in China? Yes, Your Honor, and there are some sirens in the background. I apologize if that's coming through. Well, I think that JWS is correct in this regard, and I would just ask the Court to consider that decision, which is also mentioned in the Lane case. That decision and that decision, the Board, I guess, decided, rejected the Respondent's claim that as a whole, China had a coercive family planning policy in every part of China, and therefore that individual deserved to leave. That decision by the Board says we need to know what's going on in the local province, and they did not further ask for a specificity to any municipality or locality or county, and that distinction was carried forward in JHS, which has said that the BIA must consider evidence of a policy in the alien local province, municipality, or other locally defined area. And so my argument is that the Board has said that evidence on the province is relevant, both in JWS and JHS, except now in this case they've changed the standard to say that evidence on the province is not material. That's the word used in the decision on review today, that that evidence is not material. And so I think that my main argument, as a matter of political science, what the structure is, I do agree that making grand statements about the coerciveness in the country as a whole is probably misplaced, where it goes province by province, much like states in the United States. Now, there are, there exist other local entities, and enforcement is carried out by a small village committee or a small town committee, but I do agree with both JWH and JHS that a province-wide information is at least relevant and cannot be dismissed as immaterial, as they did in this case. Thank you. You're down to about three minutes. Do you want to reserve? Yes. I had requested three minutes. That's right. Very good. We'll hear from the government. Thank you, Your Honors. May it please the Court, my name is Theodore Hurt, speaking on behalf of the respondent, Attorney General Eric Holder, this morning. Your Honors, I'd like to address probably first, since that's been one of the catalysts for questions, the issue of the province versus the locality. I think we tried to explain this in our brief, but on retrospect, I think maybe I want to sort of refocus the Court's attention a little bit to what the Board actually said, because although Mr. Cox is correct that the Board put great emphasis on Ms. Zhao's failure to identify enforcement of the policy as to returning parents with two American-born children, which I think is a central problem that Mr. Cox has not confronted. If we go back and point to the Board's decision, the Board actually did follow quite faithfully the three-part test that's in the trilogy of decisions, JWS, JHS, and SYG. The first issue is really to identify the applicable law, and the Board in its decision at AR-7 actually does say right at the forefront that there is evidence as to Guangdong Province, but it makes very clear that the evidence that Petitioner provided came from two quite distinct cities, Puning and I think it's Yangzhang, not from Taishan City, the native city in which Ms. Zhao hails. That's what I don't understand. It looks like a shell game. We go back. My perspective goes back to when we first got this wave of cases. All of our perspective does in that regard. We got many, many of these abortion forced sterilization cases five or six years ago. I wrote an opinion where they were saying the state policy of China now is that they aren't enforcing it. I wrote an opinion, Zhang, where we found in Fujian Province from the State Department report that was current at that time that if you went through that State Department report, you could find in Fujian Province that there were instances where, in fact, they did enforce very strictly the policy. And so our decision for the court was go back and look at it. You haven't, and this was province-wide. It was not focused on city. Now, flash forward to the current situation. The articulation is province or local area or the like as counsel and you have acknowledged. So they come in with information within the same province. They're not going outside the bounds of the province, but they're saying, ah, but now the evidence you came in with is only a city within the province. You haven't shown what it is in your town. Well, what is it? A local community? I mean, this is a shell game, it seems. The question I have, not just in the fact that they shrink according or expand according to what the particular board decision is, but what is the point of it? Do they have to show that they are absolutely certain to have the sterilization enforced, or is it sufficient if they show that within that province there are variations, they are, in fact, doing this, and they are at high risk of that happening to them? And that's what I'm, it isn't coming across clearly to me. Well, I'm sorry if that's the case, Your Honor. I think that just from a historical standpoint, very quickly, the three cases focused on, first, national policy, which made general statements, but left to a provincial and local level. Then the trilogy of cases talked very predominantly, one case, in fact, about Fujian province, and then this major city, Xiangli province. And one applicant was using evidence as to both levels of that hierarchy. So it was natural for the board to be addressing both tiers to identify the law. What the board did, however, in this case, Your Honor, and I want to emphasize this, is that the board actually did say, you have not shown the specifics of Guangdong province to implicate what I'll call Part 2, that you are in violation. That's where I think Mr. Cox and I also disagree. He says there's sufficient evidence, but the board actually did look at Stage 2 and did look at the province because there was evidence proffered on the motion to reopen about the province. But the key point I want to come back to, and I hope this is addressing your question, is that the key point, I think, especially on a motion to reopen, is whatever the law says, it still comes down, as the trilogy says and as the board said, to local, meaning village or town-level enforcement. I have to differ with you on that because if you read JWS and JHS and so forth, it doesn't say the particular town. It talks about the relevant local government, whether it's municipality, whether it's province or whatever. I guess from a, let's assume you're an attorney representing a petitioner, the question is what is sufficient to establish a prima facie case? And as I read those cases, and you may disagree and point me elsewhere, I would say it's sufficient for a prima facie case to get through the door and a motion to reopen to do it by province. And the board says, oh, no, no, no, you have to do it by city. And I'm not sure there's a case that would tell me, in presenting a motion to reopen, that you have to be that specific in establishing a prima facie case. Well, I think that the prima facie case still requires all three of these elements to be satisfied. And the third element I want to focus on, because in JHS, and this is language actually Mr. Cox critiques, I think, at page 26 of his brief, the quote I'm going to read, I hope accurately, the alien must also establish that the violation of the family planning policy would be punished in the local area in a way that would give rise to an objective fear of persecution. So the key point here, which is why the- Can you answer my question then? If I can come in and show, because that's the evidence I'm able to get from a source that the BIA will credit, that it is in a city that's several hundred miles away from my city, but it's in that province and reflects the political culture of that province, that I'm faulted if I come in with that and they say, well, it's not your town. So you haven't come in with your local area. Yeah, you got it for the province, but you don't have it for- what you have is for a different town. I think I would say that the board is correct, because the key point is not what the law at a province level is, although that's important, but the third point, which is where certainly this claim failed, is that it matters whether Taishan City is enforcing a law, whether or not, in other words, whether or not Puning City is enforcing it in the manner in which it was described in the congressional report. The alien in the case that you're positing, Your Honor, cannot rely on Puning City. Why? Because it's a different city. But it doesn't say that. In a province of 200 million people. You know, the- These cities are not- I'm sorry, Your Honor. I'm sorry to interrupt. No, no, please. But in JHS, it focused completely on the province. It said you haven't shown evidence of this type of persecution in the province. I think that's- And now you're saying, no, it has to be the city, but that's not what the BIA said in JHS. Well, in JHS, I come back to, I think, the point that as the case was presented to the board, the focus was on Fujian Province. And the evidence was province with, quote, uneven enforcement within the province. And then the aliens, at least in several of those cases, supplemented with very discreet evidence from Xiangli City. So the board did fault, quite properly, the alien applicants in that situation for not having sufficient evidence even at the provincial level. But it doesn't go on to say in that case that you- to discuss any of the city-specific requirements you're talking about today. Well, it's true. But there weren't any, I guess I'd say, in fairness to the board in that case and in fairness to the board in the case in front of the court today. There were not other than- Xiangli City was at issue, at least in one of those cases. But the point was that was the evidence as proffered by those alien applicants. But, counsel, I'm not following your argument. If the-you're saying in JH that, well, they didn't even get it at the province level. But what you're saying, it doesn't make any difference whether they got it at the province level in that case. Even if they had come in with province-level information, they would have had to make it the city. And the fact that they didn't come in with province-level doesn't explain the rationale. Well, Your Honor, maybe I could state it a different way. To the extent that Mr. Cox is identifying an error in the second part of the board's analysis, which is what is the law, the board actually did address that question and said you haven't shown a sufficient detail as to the law of Guangdong Province. So I'm saying today, if it wasn't clear in our brief, that Mr.- The Times then shows that, in fact, in a major city in the province, that the policy is to coerce and force the sterilizations. But that doesn't count. That's not material. What is it that they have to show, then? Well, what I would urge, Your Honor, and I don't think it's this case, but I would urge, following Your Honor's question, that at stage two, the alien does have to identify a provincial law that covers his or her situation in terms of the law will prescribe your one or two children coming back from the United States with the consequences. Now, this I don't get. I'm sorry. I mean, let's say that the provincial law would be more lax in enforcement. But there's a stricter enforcement of locality. Why wouldn't locality, in that instance, be the relevant? They've shown discrimination in the locality regardless of the provincial law. I don't think personally I would disagree with that because, and this is where I think our brief, I hope, makes the right point, is that the emphasis ultimately in terms of reopening, because that's obviously the concern of the court on review, is the sufficiency of the evidence of the enforcement. So, I mean, the board has said in several of its cases about how widespread the issue is, which is a different point in SYG. But I think coming back to either of your questions, I think that the key point here as well is that one still has to show local enforcement because these are cities of certainly millions of people. And, Your Honor, if we lack the directive or the prohibition coming at the provincial level, it's all that more important to show the local initiative. Wouldn't you agree that the alien could show enforcement by either method? If you say it's province-wide, then you don't have to show the specific locality. If you say, well, it lacks on the provincial level, but they enforce it in the locality, either way it satisfies its burden. I think I would disagree with you in terms of your first part of the hypothetical. I don't think that one can bootstrap, if I can use that word, the strictness or the strength of a provincial law absent the local enforcement. And by local I do mean something that is a city, given the magnitude of the populations we're talking about. Right. But if you have a provincial law that would prescribe punishment, doesn't that get you a prima facie case? I would say yes to go one step further with Your Honor. I would say that if a provincial law was sufficiently clear as to the fact patterns we're talking about, and I don't think the Guangdong Province one in this case has been sufficient, by means necessary, by the way, is even noted in the 2006 report of the State Department. But I think that one would have to have at that threshold a very strong stated prohibition, which was lacking altogether in Fujian Province. But here in Guangdong it's lacking too. I'm trying to get to the analysis. If you show a law or policy that's of sufficient strength province-wide, you don't have to reach the locality. If, in fact, you can't show that, then you can establish discrimination by showing enforcement or a different policy on a local level. Isn't that our analytical framework? If not, then I think we're back to the shell game that Judge Fischer said. I'd like to think in terms of the way the Board proceeded in this case, and I think analytically it did proceed in the manner that JWS and JHS prescribed. But I think, Your Honor, where I think I disagree in terms of your analysis is that even if the Guangdong Province law was as strict as you could possibly get, unless the alien could say, Well, I can tell you that it won't be laxly enforced. In other words, I don't think, and maybe this is a proof issue we haven't seen yet in these cases, by the way, I don't think that standing alone the provincial law would be sufficient. Absent some local nexus to say, If I go back anywhere in this province of 200 million people, the local people, the local enforcement, family, planning, village, or township officials have no choice but to implement it in a way. So we presume that the province won't enforce the law? Well, the province, I guess what I'm saying, Your Honor, and I don't want to go too far with this because I don't want to go too far because I don't think the Board has gone this far at all. I think that the localities will, for the sake of today's argument, follow presumably what they're directed to follow by a province. If the province were sufficiently directory, if I can use that word, prohibitory. But we know, at least from the evidence so far, and certainly in this case, that we don't have that level of evidence in terms of the specificity. So I don't think that's the case in front of us. I think an applicant would still have to show something beyond that this is a very strict-looking province. Now, maybe some evidence, if the evidence were strict enough at the provincial level and you had sufficient evidence at other localities, maybe the alien could say, well, if this is coming down from the province and I can see that there are leading cities doing this. But I don't think, with respect, Your Honor, I don't think we've got those cases in the case in front of the court because I think that the, and I again go back to the decision, is that the board actually did say there's nothing sufficient about Guangdong province here because the by any means necessary language is certainly not sufficient. It has to be more tailored to this fact pattern of the returning Chinese citizens, much like in Fujian province cases. So that's where I think, with all due respect to Petitioner's argument, I don't think we really need to resolve what I see as an issue of concern to the court in this case because I think the board actually followed JWS in terms of both levels. You keep saying that, counsel. You keep saying that and I'm still sitting around trying to hear a clear answer. But you're over time. I'm sorry, Your Honor. I'm just saying where I am. Yeah, I understand. I mean, if you thought that a 28-J letter or something supplemental would help. No, I don't need a 28-J letter. I hear enough with the case law. I'm just trying to sort it out as applied in this case. I thought the board's analysis may have been following, but it certainly was unfriendly and critical of the proof that was brought forward. So I'll just have to reflect on that. Any further questions? Thank you. I realize I'm out of time, Your Honor, but I hope that you affirm the result. Yes, thank you. Counsel, you have three minutes. Thank you. Thank you, Your Honor. The record does indicate that 659, that it's illegal in almost all provinces for a single woman to have a child. So even her first child was in violation of this provision. We do have from the Refugee Board of Canada that sterilization is advised. In Guangdong Province, if a couple has two children. And I would just like to, so that her violation of law in Guangdong Province is included in this record. I want to make also a point about the evidence. We can't hear you. I'm sorry. Can you hear me now? Yes. The village committee letter, you know, the board noted in this case that it was a copy only, but I note that the BIA practice manual, 3.3D4, strongly recommends that parties submit copies in a motion to be opened, not originals. It's a double standard for this type of case only. And also they dismissed the seal on the village committee letter. But however, the document that the State Department attaches to its 2007 profile has an identical format of seal and no other signature. And that's at page 231 of the record. And so in other cases, the BIA has just changed its application of the rules in a family planning case in a way that I think is unfair to petitioners with this type of claim. All right. If the Court has no other questions, then I would rest on my brief. All right. Thank you both for the arguments this morning. They've been very helpful to the Court. And the case just heard will be submitted for decision. Thank you very much. You can terminate the telephone connection now. Next case on the oral argument calendar this morning is Esparza v. County of Los Angeles. Good morning. I'm Michael Morgus for the appellants. I'd like to reserve.
judges: Thomas, Silverman, Fisher